UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLE SWAN, )<br>)<br>Defendant ) | No. 1:12-cr-00027-JAW-1 |

**RECOMMENDED DECISION ON MOTION TO DISMISS**

Now before the Court is Defendant Carole Swan's Motion to Dismiss Counts 14-17 of the Indictment as Multiplicitous (ECF No. 48).  For reasons that follow, I recommend that the Court grant the motion and dismiss counts 13 through 17 (not just 14 through 17), but also grant the Government leave to obtain a superseding indictment.

**THE ALLEGATIONS**

The Indictment charges Carole Swan with, among other crimes, Fraud on a Program Receiving Federal Funds, 18 U.S.C. § 666(a)(1)(A).  The charge is described as five counts and reads as follows:

On or about the dates set forth below, in the District of Maine, the defendant,

CAROLE SWAN,

being an agent of the Town of Chelsea, Maine, a local government, which received in the one year period beginning April 15, 2007, federal program assistance in excess of $10,000 from the Federal Emergency Management Agency, obtained by fraud and intentionally misapplied, property worth at least $5,000 and under the care, custody or control of Chelsea, namely, the defendant participated in the selection, award and administration of the Windsor Road Culvert Project following the Patriot's Day Storm of 2007, a contract supported by federal funds, and obtained for Marshall Swan Construction, an entity she co-owned, $396,880 as set forth below, by deceiving town employees and officials

and other potential bidders on the Project that the true material cost of the culvert was about $130,000 and causing Chelsea to pay $130,000 for the culvert to Marshall Swan Construction when, she then and there well knew, the true cost of the culvert was only about $58,000:

| Count | Date | Amount | Check # | Expense |
|---|---|---|---|---|
| 13 | 7/10/2007 | $30,000 | 19198 | First Payment on Culvert |
| 14 | 7/16/2007 | $88,960 | 19210 | First Progress Payment |
| 15 | 7/16/2007 | $100,000 | 19212 | Second Payment on Culvert |
| 16 | 8/31/2007 | $88,960 | 19312 | Second Progress Payment |
| 17 | 9/15/2007 | $88,960 | 19346 | Third Progress Payment |

Thus, defendant violated Title 18, United States Code, Section § 666(a)(1)(A).

(Indictment ¶ 7, ECF No. 1.)

The Indictment and the Government's brief in response reflect that the Town of Chelsea obtained in excess of $10,000 from the Federal Emergency Management Agency in 2007 to fund repairs to the Windsor Road in Chelsea, which road was washed out by storm water associated with the Patriot's Day Storm of 2007 and required, among other things, installation of a substantial culvert. At that time, as alleged, Carole Swan was a selectperson for the Town of Chelsea.

Carole Swan and her husband, co-defendant Marshall Swan, co-owned Marshall Swan Construction, an entity interested in bidding on the contract to repair the Windsor Road. According to clarifying statements found in the Government's response, Carole Swan (in her role as selectperson) not only attended but also ran the pre-bid meeting that prospective bidders were required to attend. At that meeting, allegedly, Swan "deceived town employees and officials and the bidders on the Project telling them that the cost of the culvert pipe was about $130,000," when in fact the culvert cost less than half that amount. (Response at 11.) The Government alleges that, because of this fraudulent representation, all of the bidders except Marshall Swan

Construction factored the false price of the culvert into their bids, ensuring that Marshall Swan Construction would be the lowest bidder and would be awarded the project.  (Id.)  According to the Indictment, Marshall Swan Construction won the bid and eventually billed the Town of Chelsea and received payments totaling $130,000 for the culvert.  (Id.)

## DISCUSSION

### A.    Double Jeopardy and Multiplicitous Counts

The Double Jeopardy Clause states that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  "An indictment countervails this principle when it charges a defendant in more than one count with committing a single offense."  United States v. Lilly, 983 F.2d 300, 302 (1st Cir. 1992).  See also United States v. Brandon, 17 F.3d 409, 422 (1994).  An indictment that charges the same offense in two or more counts is termed a "multiplicitous" indictment.  Brandon, 17 F.3d at 422;  Lilly, 983 F.2d at 302.

"Where, as here, a claim of multiplicity is premised on an indictment alleging several violations of a single statutory provision, an inquiring court must determine whether there is a sufficient factual basis to treat each count as separate."  United States v. Stefanidakis, 678 F.3d 96, 100-101 (1st Cir. 2012) (citing United States v. Pires, 642 F.3d 1, 15 (1st Cir. 2011)).  If not, then the counts are multiplicitous and violate the Double Jeopardy Clause.  Id. at 101.  "[T]he pivotal determinant in considering claims of multiplicity frequently centers on whether Congress intended the acts charged to constitute a single crime or plural offenses."  Lilly, 983 F.2d at 302.

### B.    The Statute

Title 18 U.S.C. § 666 is captioned "theft or bribery concerning programs receiving federal funds."  It prohibits agents of a governmental unit from embezzling, stealing, obtaining by fraud or otherwise knowingly converting property valued at $5,000 or more that is owned by

3

or under the care, custody, or control of the governmental unit. 18 U.S.C. § 666(a)(1)(A). The prohibition is limited to crimes against governmental units that receive benefits in excess of $10,000 under a federal program in a one-year period. Id. § 666(b). For purposes of the pending motion, it is undisputed that Swan qualifies as an "agent," that the Town of Chelsea qualifies as a local government organization or agency that received in excess of $10,000 in federal funds, and that the culvert project involved property with a value in excess of $5,000.

C.     Arguments

Carole Swan maintains that Counts 14 through 17 are multiplicitous of Count 13 because the allegations concern but one alleged "misrepresentation to the Town of Chelsea and other potential bidders of the material costs for the so-called Windsor Road culvert project" and because "there is no discernible basis from the face of the indictment to conclude that any money was obtained other than as a result of this single plan or scheme, even if . . . payments made for the culvert project occurred on five separate dates." (Motion at 1, ECF No. 48.) Swan cites United States v. Newell, 658 F.3d 1 (1st Cir. 2011), and argues that the rule of lenity requires that prosecutions related to a singular scheme in violation of 18 U.S.C. § 666 be prosecuted in a single count. (Id. at 3.) Swan also cites United States v. Urlacher, 784 F. Supp. 61 (W.D.N.Y. 1992), for the proposition that singular schemes in violation of § 666 support only one count even if the money or property in question is received in multiple installments each valued at over $5,000, and United States v. Jewell, 827 F.2d 586 (9th Cir. 1987), as analogous precedent.

The Government disagrees with Swan and maintains that the proper "unit of prosecution" calls for a separate count for "each transaction" exceeding $5,000, unless multiple transactions have been combined to reach the $5,000 threshold. (Response at 36.) The Government also states: "Under Newell, aggregating transactions over $5,000 would be duplicitous" and "here,

the payments were specifically differentiated as payments for the culvert and for progress." (Id. at 37.)[1] The Government's point, then, is that bundling these counts together into one count would result in a duplicitous indictment because two or more distinct and separate offenses would be joined in a single count. See Newell, 658 F.3d at 23.

**D.    Discussion**

The Discussion begins with United States v. Newell, a precedent relied on by both parties. Although Newell involved a duplicitous indictment rather than a multiplicitous indictment, it offers some guidance concerning § 666 prosecutions. From there, United States v. Brandon and United States v. Lilly are discussed because they actually involved the issue of multiplicity, though in the context of prosecutions for bank fraud. For reasons that follow, I conclude that the five § 666 counts in the Indictment are multiplicitous and recommend the dismissal of all five counts.

*1.    United States v. Newell*

In Newell, the Court of Appeals sought to determine what the proper unit of prosecution is under § 666. The indictment charged in one count separate misapplication of federal funds from different federal funding sources and different project accounts over the course of an entire year. Id. at 4, 22, 23.[2] The Court of Appeals concluded that neither the language of § 666 nor

---

[1]    The Government describes these counts as "federal program fraud" counts, indicates that parallel Counts 18-22 are advanced against co-defendant Marshall Swan as an aider-and-abettor, and states that the counts are based on three classes of conduct:

> (1) deceiving Chelsea employees and officials and other bidders about the culvert cost for Windsor Road Culvert Project (the "Project"); (2) obtaining for MSC the $398,880 contract for that Project, paid for with funds from the Federal Emergency Management Agency ("FEMA") on the basis of that deception, and (3) causing Chelsea to pay MSC $130,000 for a $58,000 culvert, in violation of 18 U.S.C. §§ 666(a)(1)(A) and 2 (the "federal program fraud counts").

(Response at 2, ECF No. 61.)

[2]    The Newell Court explained: "Count two, for instance, merely specifies that at some point between October 1, 2002 and September 30, 2003, Newell misapplied some funds from the BIA and also some other funds

5

its legislative history supplies an answer to what Congress intended the allowable unit of prosecution to be.  Id. at 24 (citing United States v. Cruzado-Laureano, 404 F.3d 470, 484 (1st Cir. 2005)).

Prior to Newell, circuit precedent had established merely that it is "permissible" for the Government to "aggregate transactions" to meet the $5,000 jurisdictional minimum of § 666, if the separate transactions are part of a single scheme.  Id.  In Newell, the Court found instructive precedent in which it held that the possession of multiple firearms by a prohibited person would not justify a separate count for each individual firearm.  Id. at 25 (discussing United States v. Verrecchia, 196 F.3d 294 (1st Cir. 1999)).  Relying on Bell v. United States, 349 U.S. 81 (1955), the Court concluded in Verrecchia that where the statute in question does not resolve the question, "doubt will be resolved against turning a single transaction into multiple offenses." Verrecchia, 196 F.3d at 298 (allowing a separate count for each location in which guns were found as though each location reflected a separate "transaction") (quoting Bell, 349 U.S. at 84). According to the Court, there is a compelling logic in Verrecchia indicating "that misapplying funds from agency A in March and misapplying funds from agency B in July is also sufficient to constitute two distinct transactions."  Newell, 658 F.3d at 26.  But what does Newell say about collecting multiple installment payments related to one scheme to fraudulently obtain one public contract underwritten by one federal agency?

Although Newell was not a multiplicity case, the Newell Court helpfully indicated that § 666 does not divulge congressional intent as to what the proper unit of prosecution is.  Id. at 24. The Newell Court also indicated that, "for the sake of lenity, a single transaction should not be split up into multiple offenses" in cases where a criminal statute is ambiguous about the proper

---

from the Indian Township Housing Authority.  The question now is how many statutory violations the alleged conduct states."  Newell, 658 F.3d at 23.

unit of prosecution.  Id. at 25.  Newell also persuasively indicates, if it does not expressly hold, that separate "misapplications" of federal funds derived from separate federal programs call for separate counts in relation to each separate misapplication or program.  It does not, however, indicate that every payment under a singular federally funded contract supports a separate count of fraud under § 666.

      *2.     Charging counts 13-17 in one count would not result in duplicity.*

The Government's contention that it would be duplicitous to charge counts 13 through 17 in one count is erroneous.  The rule against duplicitous indictments arises from the fact that it is essential that the jury return a unanimous verdict on a specific crime of conviction.  Newell, 658 F.3d at 11;  Fed. R. Crim. P. 31(a).  "The overall vice of duplicity is that the jury cannot in a general verdict render its finding on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or on both."  United States. v. Washington, 127 F.3d 510, 513 (6th Cir. 1997).  Generally, this defect in an indictment can be cured by providing the jury with a unanimity instruction.  Newell, 658 at 20;  United States v. Pagan-Santini, 451 F.3d 258, 266-67 (1st Cir. 2006).

Here, a jury could readily resolve the factual question of whether Carole Swan violated § 666 through fraudulent means based on proof of a singular fraudulent scheme resulting in a singular project/contract price.  A solitary count encompassing all five payment installments would not require a unanimity instruction concerning each installment payment.  A guilty verdict concerning the allegedly fraudulent representation of the culvert price and the fact that Swan thereby obtained property valued at over $5000 for Marshall Swan Construction would clearly reflect that the conviction rested on one specific transaction.  If charged in one count, there would be no hazard that the jury might return a guilty verdict without agreeing "which crime or

crimes were committed" or that this court might impose "punishment over and above what the government's proof actually sustains."[3] Newell, 658 F.3d at 27. Therefore, this federal program fraud prosecution does not threaten duplicity.

   *3.     Counts 13-17 are Multiplicitous.*

Duplicity is concern over unanimity in the jury's verdict, whereas multiplicity is a double jeopardy concern. United States v. Chiaradio, 684 F.3d 265, 272 (1st Cir. 2012). When it comes to the issue of multiplicity, "Congress's intent is paramount on this point: the legislature may castigate a particular act by exposing the actor to several prosecutions and punishments, or it may specify that the act should only be subject to a single unit of prosecution." Id. (citing, inter alia, United States v. LeMoure, 474 F.3d 37, 43 (1st Cir. 2007) ("Multiple punishments for the same offense . . . are permissible if the legislature so intended")).

The Court of Appeals has addressed the multiplicity issue in the context of bank fraud charges in both Brandon and Lilly. "Under the bank fraud statute, 18 U.S.C. § 1344, each execution of a scheme to defraud constitutes a separate indictable offense." Brandon, 17 F.3d at 422. In Brandon, the Court of Appeals held that multiple bank fraud counts did not result in multiplicity where there was an overarching scheme to defraud one lender to obtain financing for one apartment/condominium project. Id. In Lilly, however, the Court held that multiple bank fraud counts did result in multiplicity where there was an overarching scheme to defraud one lender to obtain financing for one apartment/condominium project. 983 F.3d at 305. The difference is in the details, but these cases make it clear that the existence of one overarching scheme is not dispositive of the multiplicity question. The Lilly Court explained:

> That a criminal may plot on a large scale, envisioning a series of discrete acts as part of a grand plan, does not mean that various aspects of his felonious conduct

---

[3] The fact that payment was received in installments does not even appear to be subject to any reasonable dispute.

>   cannot be separately charged under the bank fraud statute. The statute, after all, does not criminalize schemes or scheming per se; it criminalizes the execution (or attempted execution) of schemes.

Id. at 303. In the particularized context of the bank fraud statute, the difference between Brandon and Lilly ultimately lay in whether a jury could conclude, on an objectively reasonable basis, that the multiple counts in question described separate "executions" of the scheme in question. Id.; Brandon, 17 F.3d at 422.

In Lilly, the defendant bundled several fraudulent mortgages from prospective buyers of apartment units and assigned them in bulk to the lender to obtain a single loan to finance his purchase of the project. 983 F.3d at 302. In this scenario the Court found only one "execution":

>   In other words, appellant assigned to a single bank a single package of documents that consistently misstated a single material fact in order to obtain a single loan, the proceeds of which funded a single real estate purchase. We believe these facts are more comfortably categorized as a single execution of a scheme rather than as twenty-some-odd separate executions of a scheme.

Id. at 303.

By comparison, in Brandon the schemer submitted to the lender multiple fraudulent applications on behalf of multiple prospective buyers to obtain separate loans for each buyer to obtain his or her respective unit in the project. 17 F.3d at 423. In this scenario, the Brandon Court reasoned that there were multiple executions that justified multiple counts: "Objectively viewed, each loan application appears to be a repeated execution of the basic scheme and not simply an additional step or stage of one unitary transaction." 17 F.3d at 423. Distinguishing Lilly, the Court observed: "This is not, as defendants assert, a situation like the one in Lilly where a group of fraudulent mortgages was assigned in a single package of documents to the defrauded bank as security for one sum of money used to buy a single apartment complex." Id. Rather, "each loan . . . was the result of a separate fraud upon the bank." Id. at 424.

Although the instant case does not involve bank fraud, on the continuum marked out by Brandon and Lilly, the instant scenario is more like Lilly. As alleged, Defendants obtained the benefit in question—the Windsor Road Project—by means of a single scheme that was accomplished by the device of one fraudulent representation concerning the culvert's cost. Each installment payment was "simply an additional step or stage of one unitary transaction." Id. at 423. To the extent that the Court of Appeals's bank fraud precedent offers guidance in the context of evaluating multiplicity in a federal programs fraud indictment, it strongly suggests that the indictment in this case is multiplicitous. This conclusion is reinforced by the fact that § 666, unlike the bank fraud statute[4], does not use the term "execution," but rather the term "obtain." In this case, it is alleged that Defendants obtained for Marshall Swan Construction the Windsor Road Culvert project through misrepresentation of one material fact: the cost of the culvert. The rule of lenity also weighs in favor of this outcome because the term "obtain" is ambiguous, as indicated in Newell.

The facts and circumstances at hand, from an objective standpoint, call for a single count for one misrepresentation in the context of one project/contract, not a separate count for each payment installment. To the extent that Newell is germane to the issue, here there was but one federal agency involved and the obtaining by fraud of one specific public works contract with a value of $5,000 or more. Particularly when colored by the rule of lenity, this is the objectively reasonable assessment of the multiplicity question on these facts. Treating each installment

---

[4] The bank fraud statute provides:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice--
>   (1) to defraud a financial institution; or
>   (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
> shall be fined not more than $ 1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344.

payment as a separate violation, as the Government proposes, is neither the objectively reasonable nor the lenient approach. The individual installment payments were not separate transactions. They were simply steps in the fulfillment of a transaction that had already been obtained by the alleged fraud. Even if the payments were secured by separate invoices, there was no new fraud.[5] Cf. United States v. Jewell, 827 F.2d 586, 587 (9th Cir. 1987) (holding that under 18 U.S.C. § 208(a) multiple invoices did not support multiple counts where there was only one contract).

    4.    *The Remedy*

The presence of a multiplicitous indictment does not demand a dismissal order. "Where there has been no prior conviction or acquittal, the Double Jeopardy Clause does not protect against simultaneous prosecutions for the same offense, so long as no more than one punishment is eventually imposed." United States v. Josephberg, 459 F.3d 350, 355 (2d Cir. 2006). Ordinarily, a multiplicity challenge arises where certain conduct is proscribed by more than one statute. In such cases, courts generally permit the government to pursue both counts at trial and, in the event of multiple convictions, vacate all but one of the convictions. Id. Here, on the other hand, the court is not presented with multiple statutes, but with redundant counts charging the same statutory violation. In this scenario, it would be erroneous to ask the jury to determine whether Swan committed five separate violations of § 666 because, in fact, there could be only

---

[5] My research has not uncovered persuasive precedent involving a multiplicity challenge and § 666. The parties do cite and discuss United States v. Urlacher, 784 F. Supp. 61 (W.D.N.Y. 1992), which involved § 666 and a multiplicity challenge. However, Urlacher is not analogous because the government in that case aggregated multiple instances of conversion in order to reach the $5,000 statutory threshold. The court determined that the government could not charge a separate count for each federal source of funds when it had to aggregate the amounts stolen from all sources in order to meet the statutory $5,000 threshold. Id. at 64. The instant case is dissimilar because there is no need to aggregate transactions to meet the $5,000 threshold. The Urlacher decision includes the following language, which both parties cite in support of their respective positions: "Thus, I hold that the 'unit of prosecution' in this case is '$5,000 or more,' from whatever source, in any one year period in which the government or agency at issue receives more than $ 10,000 in Federal aid." Id. (See Motion at 5; Response at 36.) I do not find this statement to be persuasive in this case because it could be read to assist either Swan or the Government.

one conviction for the alleged crime. For that reason, the better remedy is to dismiss all five counts and give the Government leave to file an amended indictment. See, e.g., United States v. Kushner, 256 F. Supp. 2d 109, 115 (D. Mass. 2003) (dismissing multiplicitous counts of structuring currency transactions to evade reporting and giving government leave to obtain amended indictment); United States v. Wommer, 2:10-cr-00596-GMN-GWF, 2011 U.S. Dist. Lexis 110361, *22, 2011 WL 4500866, *8 (D. Nev. Aug. 22, 2011) (Mag. J. Recommendation), accepted, 2011 U.S. Dist. Lexis 110303, 2011 WL 4500122 (Sept. 25, 2011) (same).

## CONCLUSION

For the foregoing reasons, I now RECOMMEND that the Court GRANT Defendant Carole Swan's Motion to Dismiss (ECF No. 48). Unlike the request made by Swan, who seeks dismissal of four rather than all five counts, the Court should dismiss all five multiplicitous counts (13-17) and grant the Government leave to obtain a superseding indictment. While the Government is obtaining the superseding indictment, it should also seek to amend counts 18 through 22, which charge Marshall Swan with aiding and abetting Carole Swan in the violations charged at counts 13 through 17. Obviously, Marshall Swan[6] cannot be convicted of multiple counts of aiding and abetting Carole Swan in a violation of § 666 if Carole Swan is only subject to a solitary count.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

---

[6] Marshall Swan did not join in Carole Swan's motion or file his own motion challenging counts 18 through 22 as multiplicitous.

   Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

                /s/ Margaret J. Kravchuk
                U.S. Magistrate Judge

November 26, 2012