UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:12-cr-00027-JAW |
| | ) | |
| CAROLE SWAN AND MARSHALL SWAN, | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |

**MEMORANDUM OF DECISION ON CAROLE SWAN'S MOTION TO SEVER AND MARSHALL SWAN'S MOTION FOR RELEIF FROM PREJUDICIAL JOINDER**

Now before the Court is Defendant Carole Swan's Motion to Sever (ECF No. 50) and Defendant Marshall Swan's Motion for Relief from Prejudicial Joinder (ECF No. 53). For reasons that follow, the motions are granted in part by the severance of the extortion charges against Carole Swan.

### THE INDICTMENT

The indictment charges Carole Swan with four categories of criminal conduct and her husband, Marshall Swan, with two, as outlined below.

**1.     The Hobbs Act**

In counts 1 through 3, the indictment charges "Hobbs Act Extortion." According to the allegations, Carole Swan, in her former capacity as a selectperson for the Town of Chelsea, violated 18 U.S.C. § 1951 by extorting money from Frank Monroe Construction on three separate dates. Marshall Swan is not subject to these charges.

2.      **Fraud and False Statements in Tax Returns**

In counts 4 through 8, the indictment charges both Carole Swan and Marshall Swan with false statements made on joint tax returns filed for calendar years 2006 through 2010, in violation of 26 U.S.C. § 7206(1).  The false statements allegedly consisted of under-reporting income on Schedule C—Reported Gross Receipts or Sales.

3.      **False Statement or Fraud to Obtain Federal Employees' Compensation**

In counts 9 through 12, the indictment charges Carole Swan with false statements to obtain federal worker's compensation benefits, in violation of 18 U.S.C. § 1920.  These charges are based on statements made in each of the years 2008 through 2011 on U.S. Department of Labor Form 1032, allegedly in relation to Carole Swan's work history and work capacity. According to the charge, the misrepresentations involved Carole Swan's failure to disclose the true extent of her work for the Town of Chelsea, for Marshall Swan Construction, and for a harness racing business, and her failure to disclose extortion income related to counts 1 through 3.  Marshall Swan is not subject to these charges.

4.      **Federal Program Fraud**

In counts 13 through 17, the indictment charges Carole Swan with federal program fraud in violation of 18 U.S.C. § 666(a)(1)(A).  In counts 18 through 22, the indictment charges Marshall Swan with aiding and abetting the alleged federal program fraud.  Carole Swan and Marshall Swan are co-owners of Marshal Swan Construction.  According to the indictment, Carole Swan used her position as an agent of the Town of Chelsea to mislead town officials and bidders interested in a road repair project (the "Windsor Road Culvert Project") funded by the Federal Emergency Management Agency.  The indictment states that Carole Swan intentionally

overstated the cost of the required culvert that alleges that this ensured that Marshall Swan Construction would have the lowest bid on the project and would receive the contract.

In a recommended decision related to a motion to dismiss filed by Carole Swan, I recommended that the Court dismiss the federal program fraud counts, but give leave to the Government to secure a superseding indictment charging the federal program fraud in one count. The instant order assumes that the federal program fraud will remain in this case as a solitary count.  It is for this reason that I refer to the federal program fraud as a singular charge rather than as multiple charges.

### THE MOTIONS

Carole Swan has filed a motion requesting that the Court sever the tax fraud charges and the worker's compensation fraud charges from the extortion (Hobbs Act) charges and the federal program fraud charge.  (Carole Swan's Motion to Sever, ECF No. 50.)  She appears to concede that the extortion charges and the program fraud charge are properly joined because they are both "municipal contract charges."  (Id. at 2.)  However, she also suggests that she may wish to testify to only the extortion charges, depending on the resolution of her motion to suppress statements connected with the investigation of those charges.  (Id. at 12.)  I have separately issued a recommended decision on the motion to suppress, recommending that the Court deny that motion.

In general, Carole Swan's severance position is that there is a separate type of transaction underlying each group of charges and that there should, therefore, be three separate prosecutions. (Id. at 6.)  That Carole Swan suggests three prosecutions rather than four further suggests a concession that the extortion and program fraud are properly joined for trial.  Carole Swan's additional arguments are related in the discussion, below.

Marshall Swan has filed a motion requesting relief from prejudicial joinder.  (Marshall Swan's Motion for Relief from Prejudicial Joinder, ECF No. 53.)  He notes that he is only charged in relation to the alleged program fraud and the alleged tax evasion.  (Id. at 1.)  He requests that the Court either give him his own trial on both charges or conduct a joint trial exclusively on the program fraud charge.  (Id. at 3.)  Marshall Swan's additional arguments are related in the discussion of his motion, after the discussion of Carole Swan's motion to sever.

DISCUSSION

I.  CAROLE SWAN'S MOTION TO SEVER

Carole Swan challenges both the propriety of joinder under Rule 8 and the fairness of joinder under Rule 14.  For reasons that follow, joinder was proper under Rule 8, but testimonial prejudice warrants a severance for the extortion charges against Carole Swan.

**A.      Rule 8 Joinder**

Rule 8 provides that an indictment "may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a).  Rule 8 is construed generously in favor of joinder.  United States v. Boulanger, 444 F.3d 76, 87 (1st Cir. 2006).  Notably, Rule 8 permits the joinder of "similar" offenses and it is often noted that "similar" does not mean "identical."  United States v. Melendez, 301 F.3d 27, 35 (1st Cir. 2002); United States v. Edgar, 82 F.3d 499, 503 (1st Cir. 1996).  Similarity is evaluated from the perspective of the government and how it saw its case when it obtained the indictment.  Edgar, 82 F.3d at 503.  To determine whether counts are properly joined for trial, courts in this circuit generally consider such factors as "whether the charges are laid under the same statute, whether they involve similar victims, locations, or modes

4

of operation, and the time frame in which the charged conduct occurred." <u>United States v. Taylor</u>, 54 F.3d 967, 973 (1st Cir. 1995). "[U]nder the mandate of the Speedy Trial Act, joinder serves the purposes of economy of resources." <u>Edgar</u>, 82 F.3d at 503.

Carole Swan requests severance because the charges do not describe a common scheme or plan, are not connected transactions, and are not of similar character. (Motion to Sever at 6-9, ECF No. 50.) She contends that joinder was improper under Rule 8 because commission or proof of one charged offense would not lead to commission or proof of another; the allegations concern conduct at widely disparate times; the tax charges do not concern income allegedly obtained in the municipal contract charges; the charges involve different statutes; the charges involve different victims; and there is an absence of a "unifying modus operandi." (<u>Id.</u> at 6-8.)

The Government's response is that each count alleges "a financial crime involving fraud or deceit designed to enrich [Defendants] at the expense of government agencies and others." (Response at 16, ECF No. 61.) The Government also points to Defendants' ownership and operation of Marshall Swan Construction, described as "common to all of the counts," whether in relation to Carole Swan's alleged failure to report income or work activity, or in relation to the alleged Windsor Road Project fraud, or in connection with the extortion charges because it was an alleged excuse given by Carole Swan that she was obtaining funds from Frank Monroe Construction to compensate for certain hauling work performed by Marshall Swan Construction. (<u>Id.</u> at 16-17.) The Government also states that Carole Swan's status as a municipal employee runs through all of the counts because it is essential to the extortion and the federal program fraud that she was an agent of the Town of Chelsea and because the tax and employees' compensation counts include Carole Swan's alleged under-reporting of work activity and extorted income. (<u>Id.</u> at 16-17.) The Government also says that some of the tax fraud evidence

will overlap with evidence relevant to the other charges, such as evidence of the Windsor Road Project income in 2007 and alleged extortion income in the year 2010.  (Id. at 17.)  It also states that evidence concerning the harness horse racing business will be relevant to both the tax charges and the employees' compensation charges.  (Id.)  Finally, the Government notes that the base offense levels for sentencing purposes are not far apart, ranging from 6 to 14 with a sentencing guidelines disparity of "only 21 months" at criminal history category I.  (Id. at 17-18.)

To begin, as far as Rule 8 is concerned, there certainly would be no joinder problem if the case were divided into two parts rather than three.  Such an approach, in my view, would consist of one trial for the extortion and federal program fraud charges and another trial for the tax fraud and employees' compensation fraud charges.  Carole Swan concedes that the extortion and program fraud counts are properly joined based on the common alleged abuse of the same public office and the fact that both sets of charges involve municipal contracts.  The tax fraud and compensation fraud also are properly joined with one another because the counts overlap by three years and involve common time frames, common victims, and a common modus operandi of under-reporting income or work-activity to either short-change the government or receive a financial benefit undeservedly.  Each of these two groupings also gathers together the more similar charges and the more similar kinds of misrepresentations, victims, modes of operation, and locations.

Although it would clearly be proper to join the program fraud and extortion together for one prosecution and the tax evasion and employees' compensation fraud together for another prosecution, I am not persuaded by Carole Swan that the joinder of all four categories of counts runs afoul of Rule 8's joinder standard given the various common threads that join these two groups of counts together.  For example, this case is not like United States v. Edgar, where the

government joined charges of bankruptcy fraud with charges of workers' compensation fraud and automobile accident fraud.  There, the Court of Appeals concluded that the joinder of workers' compensation fraud and automobile fraud was appropriate because of temporal overlap, witness and testimony overlap, and the fact that evidence of automobile accident fraud would be pertinent to the alleged "disability from a back injury from [a] plane crash, and to establish that Edgar misrepresented his earnings and earning capacity."  82 F.3d at 503.  The Court also concluded, however, that joinder of the bankruptcy fraud charge was inappropriate in light of the fact that it did not share a common scheme or plan with the other charges, was brought under different statutes, involved different victims and different modes of operation, and involved fraud allegedly perpetrated in a California bankruptcy court, whereas the other charges involved fraud that transpired in Massachusetts.  Id. at 503-504.

Here, by comparison, the extortion and program fraud group of charges are tethered to the tax fraud and employees' compensation fraud group of charges because the alleged under-reporting of extortion and program fraud income and/or work activity is, according to the Government, material to the tax fraud charged in counts 5 and 8 and the extortion charged in count 12.  In addition to these evidentiary connections, Carole Swan's relationship to Marshall Swan Construction and her agency relationship with the Town of Chelsea are material to all of the counts.  Considering the generous construction that is to be given to Rule 8, these relationships are sufficient to justify joinder of all of the counts against Carole Swan for purposes of trial.

This case is also unlike United States v. Randazzo, 80 F.3d 623 (1st Cir. 1996), and United States v. Halper, 590 F.2d 422 (2d Cir. 1978), the cases principally relied on by Carole Swan in support of her proposition that tax fraud charges should be tried separately from charges

involving other false statements for the purpose of acquiring income.  (Carole Swan's Motion to Sever at 5.)  A quick review of the charges in <u>Randazzo</u> reflects that the case has little in common with the instant case and is easily distinguished on its facts.  In <u>Randazzo</u> there were 97 counts alleging that the defendant and his company "used certain substances in producing shrimp that were prohibited or at least needed to be disclosed on labels," resulting in "four charges of conspiracy . . . and 93 substantive counts of making false statements to and claims against the United States . . . and introducing misbranded or adulterated food into interstate commerce . . . ." 80 F.3d at 626-27.  The other charges were tax charges "brought against Randazzo alone and alleg[ing] that he had caused the Company to file false corporate tax returns."  <u>Id.</u>  These concerned Randazzo's alleged "misreport[] as sales expenses cash sums that he was taking weekly from the Company for personal use" and had no relationship to the charges related to how the company adulterated or mislabeled its food products.  <u>Id.</u>  After observing that false statement claims are often properly joined with tax fraud claims, the Court held that joinder was nevertheless improper in Randazzo's case because there was essentially "no . . . connection between the shrimp and tax counts."  <u>Id.</u> at 627.  Overlapping time frames, the generic commonality of differing "falsehoods," and the minor commonality of some not "important" evidence were insufficient to justify joinder.  <u>Id.</u> at 627-28.  The overlapping evidence involved in the instant case, including Swan's work for the town and her work for Marshall Swan Construction is important not only to the extortion and program fraud charges, but also to the tax evasion and employees' compensation fraud charges.

A review of the charges in <u>Halper</u> similarly reflects that it is apples and oranges to compare the joinder in that case to the joinder presently before the court:

> On February 23, 1977, Irwin Halper was indicted on sixty-eight counts of
> making and causing to be made false claims against the United States, 18 U.S.C.

§§ 287 and 2; sixty-eight counts of making and causing to be made false,
fictitious and fraudulent statements to the United States Department of Health,
Education and Welfare, 18 U.S.C. §§ 1001 and 2; and three counts of using the
mails in furtherance of a scheme to defraud the City and State of New York, 18
U.S.C. §§ 1341 and 2.  This indictment focused on certain invoices for laboratory
tests submitted during 1973 and 1974[.]  Eight months later, . . . a different grand
jury returned another indictment against Halper, this one charging him with
attempting to evade personal income tax liability for the calendar year 1974 by
filing a false and fraudulent income tax return, 26 U.S.C. § 7201.

590 F.2d at 424.  Significantly, Halper's false claims (Medicaid fraud) on behalf of his

corporation were unrelated to his failure to report certain personal income.  The tax fraud claims

involved, rather, taking corporate funds for personal use without reporting the funds as income.

Id. at 427.  The Court held that a scheme involving a company's Medicaid billing practices and

another involving a failure to report personal income did not involve similar acts or transactions

and that any connection between the two prosecutions was too tenuous to support joinder where

there was no showing that "the money 'earned' in the alleged Medicaid fraud was the money that

went unreported in the 1974 income tax return" and "proof of the one act neither constituted nor

depended upon proof of the other."  Id. at 429.

Here, in contrast, the Government has alleged that the revenue and work activity

associated with the alleged extortion and federal program fraud form a portion of the proof

related to the alleged tax fraud and employees' compensation fraud.  Additionally, Carole

Swan's status and activity as a municipal agent and as co-owner of Marshall Swan Construction

are relevant to both groups of charges.  In these respects, this case is like United States v. Jordan,

where the Court of Appeals held that tax-related charges were properly joined with mail fraud,

wire fraud, and money laundering charges.  112 F.3d 14, 16 (1st Cir. 1997).

In summary, Carole Swan fails to demonstrate that joinder of all four categories of

charges in this case offends Rule 8.  Her fallback argument is that joinder subjects her to

substantial prejudice, warranting a severance order pursuant to Rule 14.  I conclude that she is correct, but only insofar as she requests a separate trial of the extortion charges.

**B.      Rule 14 Relief from Prejudicial Joinder**

Rule 14 provides that "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant . . ., the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."  Fed. R. Crim. P. 14(a).  The movant bears the burden of making a showing of prejudice, United States v. Tracy, 989 F.2d 1279, 1283 (1st Cir. 1993), and "the district court enjoys wide latitude" when making its decision, United States v. Houle, 237 F.3d 71, 75 (1st Cir. 2001).  The court must be mindful to avoid "depriv[ing] defendant of a fair trial, resulting in a miscarriage of justice."  Id. (quoting United States v. Tejeda, 974 F.2d 210, 219 (1st Cir. 1992)).  Generally, a strong showing of prejudice is required.  Any lesser standard "would undermine the policies behind Rule 8 and essentially read that rule from the books."  United States v. Werner, 620 F.2d 922, 929 (2d Cir. 1980) (Friendly, J.) (cited with approval in Edgar, 82 F.3d at 503).

There are three kinds of prejudice that typically arise from the joinder of multiple different offenses for trial:  (1) embarrassment or confusion caused by "presenting separate defenses";  (2) reliance by the jury on proof of one offense to convict a defendant of another defense, "even though such proof would be inadmissible in a separate trial for the second offense" (evidentiary spillover);  and (3) a desire on the defendant's part to testify on one offense but not all offenses, where joinder would force the defendant "to choose the unwanted alternative of testifying as to both or testifying as to neither."  United States v. Scivola, 766 F.2d 37, 41-42 (1st Cir. 1985).  Carole Swan argues that she faces unfair prejudice falling into all three

categories.  (Motion to Sever at 10-13.)  The arguments she presses in her motion and the refinements she offers in her reply memorandum are set out below.

1.    *Embarrassment or confusion in presenting separate defenses*

According to Carole Swan, the joinder of all four categories of offenses subjects her to significant embarrassment over the presentation of dissimilar and unrelated fraudulent acts and might cause the jury to impute a bad character to her.  (Motion to Sever at 11.)  However, Carole Swan asserts this position in a conclusory manner, without offering any focused analysis, and she does not revisit the matter in her reply memorandum.  (See Carole Swan Reply Mem., ECF No. 69.)  I cannot see, having no presentation before me on the topic, that Carole Swan would have separate defenses that might cause confusion or embarrassment except insofar as she maintains that she might wish to testify to some charges but not others.  That issue will be addressed in turn.

2.    *Evidentiary spillover prejudice*

Carole Swan maintains, in a general manner, that much of the evidence from each category of charges would not be relevant to the other categories.  (Motion to Sever at 2, 11.)  For example, she posits that the court would not admit disability fraud evidence (employees' compensation fraud) in a prosecution for tax fraud or in a prosecution for extorting funds from Frank Monroe Construction or for federal program fraud associated with the Windsor Road Culvert Project.  (Id. at 12.)

In response, the Government focuses on areas of evidentiary overlap.  It maintains that evidence of extortion and fraudulently acquired federal program revenue would be admissible to demonstrate unreported income in connection with the tax fraud counts and to demonstrate work capacity in relation to the employees' compensation fraud counts.  The Government also argues

that evidence of bookkeeping work for Marshall Swan Construction would be admissible in relation to the tax fraud counts and employees' compensation fraud counts, and also in relation to the program fraud counts to establish background and motive.  The Government identifies further evidentiary overlap in relation to Carole Swan's work on behalf of the Town of Chelsea, which it says will demonstrate her agency, involvement, insider knowledge, motive, and intent. (Response at 20.)  The Government otherwise states that instructing the jury to consider the evidence on each count separately will suffice to prevent any unwarranted "propensity" bias or unfair evidentiary spillover arising from the joinder of multiple charges of extortion and fraud. (Id. at 24.)  Carole Swan does not revisit this particular kind of prejudice in her reply memorandum.

"[A] claim of prejudicial spillover cannot succeed unless 'a defendant . . . prove[s] prejudice so pervasive that a miscarriage of justice looms.'"  United States v. Trainor, 477 F.3d 24, 36 (1st Cir. 2007) (quoting United States v. Levy-Cordero, 67 F.3d 1002, 1008 (1st Cir. 1995)).  "Garden-variety arguments of spillover—such as if the jury found defendant guilty of A, that alone would lead to the conclusion that he was guilty of B—without more, are insufficient to require severance."  Edgar, 82 F.3d at 505.

Carole Swan fails to demonstrate pervasive, prejudicial evidentiary spillover.  As the Government persuasively argues, much of what Carole Swan might describe as prejudicial evidentiary spillover actually reflects relevant evidentiary relationships among the different charges, particularly as the alleged tax fraud and employees' compensation fraud charges subsume revenue and work activity associated with the extortion and federal program fraud charges and all bear some relation to Carole Swan's interest in and work on behalf of Marshall Swan Construction.  In other words, there is a fair "quantity of fully relevant crossover

evidence." Trainor, 477 F.3d at 36.  In the absence of a showing of "pervasive" prejudice that arises in relation to some charges because of their joinder to other charges, Carole Swan's spillover showing does not suggest "that a miscarriage of justice looms" or that the Rule 404 evidentiary concern that is inherent in all prosecutions that join multiple alleged frauds cannot be redressed with "careful instructions."  Id. at 36-37;  See also United States v. Osman, 697 F. Supp. 2d 161, 164 (D. Me. 2010);  United States v. Theriault, 670 F. Supp. 2d 96, 99 (D. Me. 2009).  Finally, for reasons that follow, I am ordering severance of the extortion charges based on testimonial prejudice.  This partial relief will ameliorate the inherent prejudice associated with evidentiary spillover.

      *3.*    *Testimonial prejudice*

      Carole Swan asserts that she may well desire to testify in relation to some charges but not others.  She says it is impossible to decide because "[t]he counts are so broadly based and span such a long period of time."  (Motion to Sever at 12.)  She expresses concern that she has a pending motion to suppress certain statements concerning the extortion counts and represents that, if the motion were granted, she might wish to remain silent to avoid the use of her statements for impeachment purposes.  (Id.)  On the other hand, she says that if the motion were denied, "she may then have to testify so as to permit the jury to learn of the circumstances surrounding the taking of such confession," which would then force her to testify concerning the other charges.  (Id.)  I have separately issued a recommended decision on the motion to suppress, recommending that the motion be denied.

      The Government characterizes Carole Swan's representations about potential testimony as conclusory and insufficient to support severance.  (Response at 21.)  It observes that Carole Swan has not expressed a clear intention to testify on any count and that she has failed to explain

how being subject to questioning by the Government would materially assist the Government in relation to proving other offenses.  (Id. at 21-23.)

In her reply, Carole Swan offers a more focused presentation, backed up with a proffer consisting of a sworn statement.  (Carole Swan Reply, ECF No. 69;  Carole Swan Proffer, ECF No. 69-1.)  Her proffer reflects a desire to testify in support of her defense to the Hobbs Act extortion charges and a concomitant fear that doing so will prejudice her by overriding her Fifth Amendment right not to testify concerning the other charges presently joined in the indictment.

When the movant's concern is with preserving the right to remain silent on one charge while also preserving the right to testify on another, the movant bears a significant burden:

> To make the requisite strong showing of prejudice, a defendant must "present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of economy and expedition in judicial administration against the defendant's interest in having a free choice with respect to testifying."

United States v. Tracy, 989 F.2d 1279, 1283 (1st Cir. 1993) (quoting Baker v. United States, 401 F.2d 958, 977 (D.C. Cir. 1968)).  A "convincing showing" of "important testimony" regarding one charge and a "strong need" to remain silent about another is generally required.  United States v. Richardson, 515 F.3d 74, 81 (1st Cir. 2008).  "[W]hile the courts zealously guard a defendant's Fifth Amendment right not to testify at all, the case law is less protective of a defendant's right to testify selectively, addressing some issues while withholding testimony on others that are related."  United States v. Alosa, 14 F.3d 693, 695 (1st Cir. 1994).  Stated otherwise:  "The Fifth Amendment protects the defendant's right to choose whether to testify.  It does not assure that the testimony will only benefit the defendant."  Id. at 696.

Carole Swan says she has important testimony to provide related to the scienter element of the extortion charges.  (Carole Swan Reply Mem. at 3, 5.)  She proffers that it was Frank

Monroe who approached her to solicit her participation in a scheme to overbill the Town of Chelsea and she represents that she went along with his offer so that she could gather evidence to prove Monroe's wrongdoing and do the Town a favor. According to Swan, Monroe had a checkered history with the Town in relation to his company's past participation in certain public works projects, but a new town manager was overlooking this fact and Carole Swan was having a hard time convincing others in authority that the Town should not award contracts to Monroe. Swan also maintains that she was aware that a member of the sheriff's department was on Monroe's payroll. Carole Swan wants to be able to testify about these facts and circumstances to challenge the allegation that she intended to extort money and to explain the circumstances surrounding her apparent confession. In order to determine whether this proffer involves important testimony, I first consider what scienter amounts to in the context of a Hobbs Act extortion charge.

As Swan contends, the Hobbs Act charges do include an element of intent, although the exact nature of this element is not crystal clear. The Act prohibits obstructing, delaying, or affecting commerce by, among other means, extortion or attempted extortion. 18 U.S.C. § 1951(a). The Act defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." Id. § 1951(b)(2). The concern here is specifically with what the scienter element consists of in the context of a charge of inducement under color of official right. In United States v. Sturm, 870 F.2d 769, 774 (1st Cir. 1989), the Court of Appeals considered the kind of knowledge a defendant must have about the wrongfulness of his conduct in order to commit an act of extortion based on economic fear. There, the Court held that "the term 'wrongful' requires the government to prove . . . that the defendant knew that he was not legally entitled to the

property that he received." Id.  The Court vacated and remanded a conviction because jury instructions provided by the trial court omitted reference to a requirement that the government prove "the defendant's subjective intent with respect to the element of wrongfulness." Id.  Here, however, Swan is charged with an act of inducement under color of official right, which is not subject to the "wrongful" modifier found in § 1951(b)(2).[1]  See United States v. Hathaway, 534 F.2d 386, 393 (1st Cir. 1976), cert. denied, 429 U.S. 819 (1976) (noting the disjunctive nature of the Hobbs Act definition of extortion).  Nevertheless, the Hathaway Court observed in its opinion that it "grounded" its holding "in the notion, 'universal and persistent in mature systems of law,' that 'an injury can amount to a crime only when inflicted with intention.'" Id. (quoting Morissette v. United States, 342 U.S. 246, 250-51, (1952)).  Despite the non-application of the wrongful modifier in the context of a charge of extortion under color of official right, it appears that a scienter element remains that consists of the "corrupt taking of a fee" or "misuse of public office" to induce a transfer of property.  Id.  See also United States v. Aguon, 813 F.2d 1413, 1418-19 (9th Cir. 1987), modified en banc, 851 F.2d 1158 (1988) ("A fortiori, criminal intent must be submitted to the jury in a case charging extortion under the Hobbs Act.  'Willful' or 'corrupt' were the common law terms focusing on and emphasizing the specific intention the extortionist must be shown to have.");  United States v. O'Grady, 742 F.2d 682 (2d Cir. 1984) (observing divergent authority concerning the necessity of proving inducement, but concluding that the divergence did not suggest that any courts of appeals would "permit a conviction for extortion under color of official right absent evidence that the public official misused his office to obtain the benefits."[2]

---

[1]      In any event, Carole Swan does not suggest, nor could she suggest, that she had any legitimate claim to obtain the funds in question.

[2]      I am not suggesting that there is a "specific intent" requirement under the Hobbs Act.  Sturm certainly does not suggest that such a requirement exists, 870 F.2d at 776-77, and other Courts of Appeals have not been receptive

I conclude that the proffer amounts to relevant testimony concerning the scienter element underlying proof of "inducement," which is a requirement found in the express language of the Act, though I also note that the Court of Appeals is inclined to construe the statutory term "induced" broadly.  Id. at 394 (observing that the challenged instruction "suggested that the initiative had to come *solely* from the official" and may for that reason "have been even more favorable to the defense than was strictly necessary").  Carole Swan's proffered testimony—that she never induced payments from Frank Monroe and was only going along to gather evidence in a solo sting operation—is "important" because it has some tendency to undercut the scienter element of the charged extortion and it is testimony that only she can provide.

Carole Swan must also demonstrate that she has a strong need to remain silent concerning the remaining charges against her; that being subject to cross examination would seriously prejudice her defense against other charges in the indictment.  What she asserts in this regard is valid:

> Specifically, if Swan testifies regarding the Hobbs Act violations, the government will have a free hand to not only cross-examine her as to those charges, but about critical elements of proof on the other charges as well.  As but a few examples, the prosecution may seek to interrogate her about the scienter element and her role in the preparation of Marshall Swan's tax returns for purposes of the tax fraud charges;  or about her activities as a selectperson, and for Marshall Swan Construction, and in the harness horse racing business, all to establish whether those activities constituted "work" for purposes of the workers compensation fraud charges;  or about her knowledge of the "true" versus allegedly inflated cost of the culverts regarding the federal program fraud counts.

(Carole Swan Reply Mem. at 7-8.)  There can be little question but that the Government will subject Carole Swan to cross-examination concerning her alleged sting operation if she testifies

---

to such an argument.  See, e.g., United States v. Greer, 640 F.3d 1011, 1018 (9th Cir. 2011) (discussing Sturm and finding "no justification" for such an argument in the context of extortion by means of "wrongful" acts);  United States v. Carmichael, 232 F.3d 510, 522 (6th Cir. 2000) ("To the extent [the defendant] is arguing that the district court was required to instruct the jury that, in order to convict [him], it had to conclude [he] intended to violate the Hobbs Act, we reject the argument as unsupported by the law.").

and that, if the other charges were joined in the same prosecution, Swan might well forego her defense on the extortion charges to avoid the risk of incriminating herself on the other charges. In light of this strong showing of testimonial prejudice, it is just that Carole Swan receive a separate trial on the extortion charges.

I am mindful of the interest in judicial economy that is somewhat undermined by my conclusion, particularly because, by virtue of a referral under 28 U.S.C. § 636, I am making a ruling on behalf of the Court concerning trials that I will not conduct myself. There is a likelihood that there will be a fair amount of redundant evidence related to Carole Swan's relationships with the Town of Chelsea and Marshall Swan Construction. On the other hand, a separate trial of the extortion charges will at least remove the majority of that evidence from the other trial. Additionally, a separate trial of the extortion charges will not include a considerable amount of evidence related to the alleged multi-year tax fraud and employees' compensation fraud, not to mention the facts and circumstances related to the alleged federal program fraud. Thus, separate trials will not involve entirely redundant evidentiary presentations and, in fact, are likely to be predominantly non-redundant. I cannot see that the relative economy of one trial of all charges is great enough to override the testimonial prejudice faced by Carole Swan given her professed desire to testify concerning an important element of the extortion charges and a strong need to remain silent concerning the other charges.

## II. MARSHALL SWAN'S MOTION FOR RELIEF FROM PREJUDICIAL JOINDER

Marshall Swan beings his motion requesting relief from prejudicial joinder by noting that he is only being prosecuted on the tax fraud charges and as an aider and abettor of the alleged federal program fraud. (Motion for Relief from Prejudicial Joinder at 1-2, ECF No. 53.) He requests that the court either sever the case so that he is tried alone on both of these maters (in

one trial) or sever the federal program fraud prosecution so that he can offer testimony against

that charge while remaining silent concerning the tax fraud charge.  (Id. at 3.)  For reasons that

follow, I do not order any further severance of charges based on Marshall Swan's presentation,

but I grant his motion in part because the severance of the extortion charges against Carole Swan

affords Rule 14 relief to Marshall Swan as well.

**A.     Rule 8 Joinder of Defendants**

Rule 8 provides that an indictment "may charge 2 or more defendants if they are alleged

to have participated in the same act or transaction, or in the same series of acts or transactions,

constituting an offense or offenses."  Fed. R. Crim. P. 8(b).  It was appropriate for the indictment

to join Carole Swan and Marshall Swan because they are alleged to have participated in the same

acts or transactions underlying two of the charges.

**B.     Rule 14 Relief from Prejudicial Joinder**

 "[W]ithout a 'serious risk that a joinder would compromise a specific trial right . . . or

prevent the jury from making a reliable judgment about guilt or innocence,' defendants

charged in the same indictment should be tried together."  Houle, 237 F.3d at 75-76 (quoting

Zafiro v. United States, 506 U.S. 534, 539 (1993)).  Because there is a general presumption that

"those 'who are indicted together should be tried together,'" United States v. DeLeon, 187 F.3d

60, 63 (1st Cir. 1999) (quoting United States v. O'Bryant, 998 F.2d 21, 25 (1st Cir. 1993)),

defendants must come forward with more than conclusory allegations of prejudice, United States

v. Baltas, 236 F.3d 27, 33 (1st Cir. 2001).  "Prejudice from joinder can come in various forms,

including jury confusion, the impact of evidence that is admissible against only some defendants,

and 'spillover' effects where the crimes of some defendants are more horrific or better

documented than the crimes of others." United States v. Innamorati, 996 F.2d 456, 469 (1st Cir.

1993).  "[D]efendants are not entitled to severance merely because it would improve their chances of acquittal."  Id.  "[T]he prime factor that a court must consider in evaluating a severance motion 'is whether the court may reasonably expect the jury to collate and appraise the independent evidence against each defendant.'"  United States v. Rodriguez-Marrero, 390 F.3d 1, 27 (1st Cir. 2004) (citing United States v. Perkins, 926 F.2d 1271, 1281 (1st Cir. 1991), and quoting United States v. Sherlock, 865 F.2d 1069, 1079 (9th Cir. 1989)).

Marshall Swan's stated concern is that the indictment joins the program fraud with multiple other charges of fraud, some of which pertain only to Carole Swan.  He is concerned that his credibility is unfairly undermined by this joinder and believes that there is prejudice because he will be regarded by the jury as guilty by association.  (Id. at 4-5.)

### 1.      Spillover prejudice and guilt by association

I conclude that these particular forms of prejudice are weighty enough to justify a severance, but only to the extent of severing the extortion charges against Carole Swan.  The extortion charges are brought exclusively against Carole Swan and she has expressed an intention of testifying in a manner that is in tension with prior statements provided to law enforcement.  There is a significant danger that if Carole Swan's testimony is discredited in the jury's eyes there could be spillover prejudice for Marshall Swan.[3]  This degree of prejudice does

---

[3]      In considering these kinds of prejudice I have considered whether Carole Swan's confession could generate a Bruton concern for Marshall Swan, although the issue was not raised.  See Bruton v. United States, 391 U.S. 123 (1968).  Citing Bruton, the Supreme Court has recognized that the admission of "[e]vidence that is probative of a defendant's guilt but technically admissible only against a codefendant" is one of the circumstances which might carry sufficient prejudice to warrant a severance.  Zafiro, 506 U.S. at 539.  However, Bruton is violated only where the extrajudicial comments are "clearly inculpatory" and are "vitally important to the government's case."  United States v. Espinosa, 771 F.2d 1382, 1399 (10th Cir.), cert. denied, 474 U.S. 1023 (1985).  During the interview in which Carole Swan made certain inculpatory statements concerning the alleged extortion, she emphatically stated that Marshall Swan "did not have a clue" about what was happening, although she also maintained that some of the money she received was owed to her husband.  There is an extra degree of prejudice for Marshall Swan that grows out of the extortion charges against Carole Swan due to Carole Swan's confession and her statement of desire to testify, even though Carole Swan did not directly implicate Marshall Swan in her confession.  This prejudice further supports my decision to sever the extortion charges from the remainder of the government's case.

not exist, however, in a joint prosecution involving the remaining charges of tax fraud, employees' compensation fraud, and federal program fraud.  Once those charges are separated from the extortion charges, the concerns that remain for Marshall Swan can be addressed through careful instruction concerning the jury's need to "collate and appraise" the evidence concerning each charge and each defendant separately.  Cautionary instructions to the jury will adequately address the concerns for both charge spillover prejudice and guilt-by-association prejudice. Additionally, because Marshall Swan is subject to two of the three categories of charges, his contention that giving him a separate trial would have only limited impact in terms of economy is not persuasive.  (See Motion for Relief from Prejudicial Joinder at 6.)[4]

> 2.    *Testimonial prejudice*

Marshall Swan also presses a testimonial prejudice argument.  He contends that he "is likely to have to testify regarding the culvert project" because "[h]e did the work, it was his bid, and the allegations are that he knowingly submitted a bid proposal to the town inflating the costs of the culvert."  (Motion for Relief from Prejudicial Joinder at 5.)  At the same time, Marshall Swan says he wishes to exercise his Fifth Amendment right to remain silent in respect to the tax fraud charges.  (Id.)  Marshall Swan's limited presentation in his motion is insufficient, but he supplements it in his reply memorandum by way of further representations from his counsel. Specifically, counsel represents:

> [T]he type of information that Marshall Swan wishes to testify to concerns the
> division of labor between Marshall Swan and Carole Swan regarding the
> operating procedures and internal operation of Marshall Swan Construction.
> That testimony concerns the division of labor regarding who is responsible for
> bookkeeping and who is responsible for actually running construction equipment
> out in the field.  This type of testimony is solely within the knowledge of

---

[4]    Marshall Swan's argument that the Government needs to allege an overarching conspiracy or explain a unified prosecution theory for all counts in order to properly join them under Rule 8 is unpersuasive.  (See Motion for Relief from Prejudicial Joinder at 5-6.)  I have already identified the evidentiary connections and relationships among the several counts in my discussion of Carole Swan's motion.

Defendant Marshall Swan as he cannot count on being able to compel Co-
Defendant Carole Swan to the stand in this case.

I am not persuaded that this presentation is weighty enough to justify severance.  To begin, I

observe that one of Marshall Swan's original proposals was to permit him to have his own

separate trial of *both* the tax charges and the program fraud charge.  This proposal, never

abandoned (see Marshall Swan Reply Mem. at 10, ECF No. 70), is certainly at odds with the

allegations of testimonial prejudice.  Moreover, I cannot discern from this proffer that providing

this sort of testimony would be inconsistent with a general denial of personal knowledge or

participation related to the preparation of Marshall Swan Construction's tax returns.  In other

words, the showing related to the hazard of testifying is essentially conclusory and unpersuasive.

By comparison, Carole Swan, the presumptive "bookkeeper" in Marshall Swan's showing, runs

a severe risk if she exposes herself to cross-examination, most significantly with respect to her

representations of total disability in connection with the employees' compensation charges and

her alleged orchestration of the federal program fraud, but also with respect to the tax charges

given the bookkeeper role Marshall Swan described her as having.

### CONCLUSION

For reasons set forth  in the preceding discussion, the court GRANTS IN PART Carole

Swan's Motion to Sever (ECF No. 50) and Marshall Swan's Motion for Relief from Prejudicial

Joinder (ECF No. 53), by severing the extortion charges in counts 1 through 3 for separate trial.

### CERTIFICATE

Any objections to this Order shall be filed in accordance with Federal Rule of Criminal
Procedure 59.

***So Ordered.***

December 12, 2012          /s/ Margaret J. Kravchuk
                          U.S. Magistrate Judge