UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:12-cr-00027-JAW-01 |
| | ) | |
| CAROLE SWAN | ) | |

**ORDER ON GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF DOMESTIC VIOLENCE AND TO ADMIT PRIOR CONVICTIONS**

Concluding that the Defendant's proposed testimony about her history of domestic violence is admissible to explain the circumstances and voluntariness of her statement to law enforcement, the Court denies in part the Government's motion in limine seeking to exclude such evidence; however, as the relevance of the evidence is limited, the Court will remain vigilant as to Rule of Evidence 403 concerns. Concluding that her prior convictions for federal income tax and workers' compensation fraud are mandatorily admissible under Rule of Evidence 609(a)(2), the Court grants in part the Government's motion and will admit those convictions for impeachment purposes if the Defendant testifies.

**I.   PROCEDURAL HISTORY**

On July 26, 2013, a federal jury found Carole Swan guilty of four counts of making false statements on her federal tax returns and guilty of two counts of making false statements to obtain federal workers' compensation benefits.[1] *Jury Verdict Form* (ECF No. 167) (*Jury Verdict Form*). Before trial, the Court severed for

---

[1] The jury also found Ms. Swan not guilty of two counts of making false statements to obtain federal workers' compensation benefits and of one count of fraud on a government program. *Jury Verdict Form* (ECF No. 167).

later trial three Hobbs Act extortion counts against Ms. Swan. *Mem. of Decision on Carole Swan's Mot. to Sever and Marshall Swan's Mot. for Relief from Prejudicial Joinder* (ECF No. 86); *Order Overruling the Defs.' and the Gov't's Objections to the Magistrate Judge's Order Granting in Part and Denying in Part Carole Swan's Mot. to Sever and Marshall Swan's Mot. for Relief from Prejudicial Joinder* (ECF No. 105). A new jury having been selected, these Hobbs Act counts are scheduled for trial on Tuesday, September 10, 2013. *Notice of Hr'g* (ECF No. 232).

On September 30, 2013, the Government moved in limine to exclude evidence of domestic violence testimony and to admit Ms. Swan's recent convictions during the upcoming trial. *Gov't's Mot. in Limine to Exclude Domestic Violence Testimony and to Admit Prior Convictions* (ECF No. 230) (*Gov't's Mot.*). Ms. Swan responded. *Def. Carole Swan's Resp. to the Gov't's Mot. in Limine to Exclude Domestic Violence Testimony and to Admit Prior Convictions* (ECF No. 239) (*Def.'s Resp.*) The Government replied. *Gov't's Reply to Gov't's Mot.* (ECF No. 240) (*Gov't's Reply*).

## II.   BACKGROUND: EVIDENCE OF DOMESTIC ABUSE

### A.   The Government's Evidence

To summarize the Government's case, in its trial brief, the Government alleges that when Carole Swan was a Selectperson for the town of Chelsea, Maine, she extorted three payments—$3,000 in February 2010, $7,000 in December 2010, and $10,000 in January/February 2011—from a local snowplow contractor, Frank Monroe, in exchange for a promise to secure town contracts for him and to expedite payment. *Gov't's Trial Br.* (ECF No. 191).

### B. Carole Swan's Defense

Carole Swan responds that "she was herself in the process of investigating Monroe for possible wrongdoing." *Def. Carole Swan's Trial Br.* at 2 (ECF No. 224) (*Def.'s Trial Br.*). She "intends to raise as a defense that she had reason to believe that Mr. Monroe had been engaged in fraudulent business activities", that he approached her numerous times "asking her to secure favorable contracts and offering kickbacks", and that her "intent to commit a crime will be drawn into question." *Id.* at 2. In effect, Ms. Swan has claimed she was engaged in a "solo sting" to investigate Mr. Monroe's unethical and illegal activity in attempting to bribe town officials.

### C. The February 3, 2011 Sheriff Interview

Before the last alleged payment from Frank Monroe to Carole Swan, Mr. Monroe went to the county sheriff and the deputy sheriffs had monitored and taped a series of telephone calls between Mr. Monroe and Ms. Swan. Directly after the last transfer, they took Ms. Swan to the local police station for an interview, where two deputies questioned her for about ninety minutes.[2] The interview was videotaped and recorded and the Government contends that during the interview, Ms. Swan made some significant admissions. Critically for purposes of the motion

---

[2] Ms. Swan challenged the admissibility of the interview itself in a motion to suppress. *Def. Carole Swan's Mot. to Suppress Statements* (ECF No. 47). The Magistrate Judge presided over an evidentiary hearing on the motion and recommended its denial. *Recommended Decision on Mot. to Suppress* (ECF No. 85). The Court affirmed the Recommended Decision over Ms. Swan's objection. *Order Affirming the Recommended Decision of the Magistrate Judge on Mot. to Suppress* (ECF No. 104).

in limine, Ms. Swan failed to mention to the deputy sheriffs that she was engaged in a "solo sting" of Mr. Monroe.

### D. Carole Swan's Explanation of the Solo Sting Omission

In her trial brief, Ms. Swan stated that to explain her failure to tell law enforcement about her solo sting operation, she wished to present evidence of long-term domestic violence that she had received at the hands of her husband, Marshall Swan. *Def.'s Trial Br.* at 4. She says that "the domestic abuse created in Carole a propensity to tell male authority figures what she believed they wanted to hear, and to accept personal blame for events when being accused of wrongdoing, even when she was without fault." *Id.*

### E. The Motion and Response

#### 1. The Government's Motion

In its motion in limine, the Government seeks to exclude all reference to domestic violence. *Gov't's Mot.* at 4-6. The Government contends that the probative value of the admission of evidence of domestic violence would be "substantially outweighed by the danger of unfair prejudice, confusing the issues and misleading the jury." *Gov't's Mot.* at 5. Noting that Ms. Swan has identified "no expert witness and provided no expert discovery" on this point, the Government is decidedly skeptical about the relationship between the evidence of domestic abuse and Ms. Swan's failure to inform the deputies about the solo sting. *Id.* It worries that Ms. Swan is seeking to have to jury "decide this case on an improper emotional basis", *id.* at 5-6, and urges exclusion under Federal Rule of Evidence 403. *Id.* at 4-6.

### 2. Carole Swan's Response

In her trial brief and in her response to the motion in limine, Ms. Swan urges the Court to deny the Government's motion and allow evidence of domestic violence. *Def.'s Trial Br.* at 2-4; *Def.'s Resp.* at 1-3. Ms. Swan says that she is entitled under federal statute and First Circuit caselaw to present evidence of the voluntariness and circumstances of her statement to the deputies so that the jury may determine its weight and credibility. *Def.'s Trial Br.* at 2-3 (citing 18 U.S.C. § 3501(a); *United States v. Campusano*, 947 F.3d 1, 6 (1st Cir. 1991)).

### 3. The Government's Reply

In its reply to Ms. Swan's response to the motion on limine, the Government reiterates its request to exclude all testimony of domestic violence. *Gov't's Reply* at 1-4. The Government argues that Ms. Swan's proposed testimony would be unreliable because there is no evidence that Ms. Swan "suffers from a mental illness or a personality trait that renders her unusually susceptible to coercive interrogation techniques." *Id.* at 2. Based on this lack of evidence, the government concludes that "there is no objective way for the jury to assess her claimed propensity evidence or to determine whether the KSO's deputies interviewing techniques induced a truthful or false confession." *Id.* The Government also reaffirms its position that "whatever minimal probative value there is in this testimony is substantially outweighed by the potential for undue prejudice and misleading the jury." *Id.* at 3.

### F.     Discussion

First, the Court concludes that Ms. Swan must be allowed to present the jury with evidence of domestic violence in her relationship with her husband.  The Court views Ms. Swan's statements to the deputies as potentially powerful evidence of her guilt and her failure to tell the deputies that she was investigating Frank Monroe's criminality begs an explanation.  To exclude her proffered explanation would, in the Court's view, deprive Ms. Swan of her ability to present evidence consistent with her theory of defense.

Furthermore, evidence of the circumstances under which she made the statement to the deputies is relevant.  At the close of the case, the Court expects to instruct the jury:

> You have heard evidence that Carole Swan made statements in which the Government claims she admitted certain facts.  It is for you to decide (1) whether Ms. Swan made the statement, and (2) if so, how much weight to give it/them.  In making those decisions, you should consider all of the evidence about the statements, including the circumstances under which the statements may have been made and any facts or circumstances tending to corroborate or contradict the version of events described in the statements.

*Judge D. Brock Hornby's 2013 Revisions to Pattern Criminal Jury Instructions for the District Courts of the First Circuit* § 2.13 (updated June 26, 2013) (*Hornby*).  The "circumstances under which the statements may have been made" is broad enough to include her history of domestic abuse and her explanation as to why she failed to mention her investigation of Frank Monroe to the deputy sheriffs.  *See Campusano*, 947 F.2d at 6.

The Court adds a couple of caveats. First, testimony about domestic violence, although relevant, necessarily carries the potential for "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. At the last trial, evidence of domestic violence took center stage with extensive testimony from Ms. Swan, her Mother, and her sons. Moreover, Ms. Swan's testimony on this issue was deeply disturbing and occasionally very emotional, making Ms. Swan sympathetic, not for her potentially criminal actions, but for the unfortunate circumstances of her marriage. As more evidence of domestic abuse is introduced, the risk that the evidence will become inadmissible under Rule 403 becomes greater. This is in part because, unlike the first trial in this case, Ms. Swan—by her own argument—is presenting this evidence for a limited purpose: to explain why she did not tell the deputies about her solo sting. Unlike the first trial, she is not contending that her actions in taking money from Frank Monroe were the result of years of domestic abuse. With more limited relevance of this evidence, the Court must be especially vigilant about crossing the line when the relevance of evidence of domestic abuse becomes substantially outweighed by Rule 403 dangers.

The extent to which Ms. Swan may present corroborating evidence of domestic violence may depend upon the Government's tactical decisions. If the Government does not challenge the essence of Ms. Swan's allegations of domestic abuse, Ms. Swan will be hard pressed to convince the Court to allow other witnesses—her Mother and her sons, for example—to buttress her unchallenged

testimony. On this point, the Court distinguishes between challenging Ms. Swan's contention that her history of domestic violence caused her to fail to tell the deputies about her solo sting and challenging whether she was in fact subjected to domestic violence to begin with. If the Government elects to challenge Ms. Swan's assertion that she has been subject to a long history of domestic violence, the Court may allow her to present evidence from other witnesses corroborating that abuse.

### III.   PRIOR CONVICTIONS

####   A.   Background

As earlier noted, on July 26, 2013, a federal jury found Carole Swan guilty of four counts of making false statements on her federal tax returns and guilty of two counts of making false statements to obtain federal workers' compensation benefits. *Jury Verdict Form* at 1-8.

####   B.   The Parties' Positions

#####     1.   The Government's Motion

The Government contends that these convictions are admissible for impeachment purposes under Federal Rule of Evidence 609(a)(2) if Ms. Swan testifies. *Gov't's Mot.* at 6-8. It asserts that each conviction fits within Rule 609(a)(2)'s requirement that "the elements of the crime required proving . . . a dishonest act or false statement." *Id.* at 6 (quoting FED. R. EVID. 609(a)(2)).

#####     2.   Carole Swan's Response

Ms. Swan concedes that a jury verdict of guilt is admissible for impeachment purposes even though it may be subject to appeal. *Def.'s Trial Br.* at 4-5. However,

8

she asserts that the prior convictions in this case are inadmissible under *United States v. Burkhead*, 646 F.2d 1283 (8th Cir. 1981). *Id.* at 5-6. She also says that the First Circuit has tightened the requirements for admissibility of prior convictions under Rule 609 to impeach defendants. *Id.* at 6-7 (citing *United States v. Tse*, 375 F.3d 148, 163 (1st Cir. 2004)). Under these stricter rules, Ms. Swan urges the Court to deem the prior convictions inadmissible and to make this ruling before trial. *Id.* at 6-9.

   **3.**   **The Government's Reply**

In its reply to Ms. Swan's response to the motion on limine, the Government reasserts its request to have the Court admit Ms. Swan's prior convictions. *Gov't's Reply* at 3-4. The government raises no additional arguments on this issue in the reply. *Id.*

 **C.**   **Discussion**

First, if the July 2013 convictions are otherwise admissible, the fact that they are not final and have not been reduced to judgment does not preclude their admission: "A conviction that satisfies this rule is admissible even if an appeal is pending." FED. R. EVID. 609(e). However if she chooses to do so, Ms. Swan may admit evidence that she retains the right to appeal the jury verdicts. *Id.* ("Evidence of the pendency is also admissible").

Second, the convictions for tax fraud and false statements, 26 U.S.C. § 7206(1), and for false statements to obtain federal workers' compensation benefits,

9

18 U.S.C. § 1920, are convictions under Rule 609(a)(2) in which an element of each crime is a dishonest act or false statement.

Third, the convictions for tax fraud and workers' compensation fraud are admissible under the mandatory admission provision of Rule 609(a)(2). The *Tse* Court urged caution in admitting convictions for impeachment against a defendant because "there is a heightened risk that a jury will use evidence of a prior conviction of the accused to draw an impermissible propensity inference" and "revelations of past convictions may inflame the jury." *Tse*, 375 F.3d at 163-64. But the First Circuit was addressing convictions under Rule 609(a)(1), not Rule 609(a)(2). For Rule 609(a)(2) convictions, the First Circuit has held that "district courts do not have discretion to exclude prior convictions involving dishonesty or false statements." *SEC v. Sargent*, 229 F.3d 68, 80 (1st Cir. 2000); *United States v. Tracy*, 36 F.3d 187, 192 (1st Cir. 1994); *United States v. Fowler*, No. 09-cr-47-01-JL, 2009 U.S. Dist. LEXIS 48732, *1-7 (D.N.H. May 29, 2009); *see United States v. Carey*, 2009 U.S. Dist. LEXIS 15736, *4 (D. Me. Feb. 26 2009) ("Evidence of a conviction for identity fraud is mandatorily admissible"). Accordingly, Ms. Swan's convictions for income tax and workers' compensation fraud are admissible for impeachment purposes only, if Ms. Swan elects to testify.

## IV.   CONCLUSION

The Court GRANTS in part and DENIES in part the Government's Motion in Limine to Exclude Domestic Violence Testimony and to Admit Prior Convictions (ECF No. 230). Ms. Swan will be allowed to testify about domestic abuse to explain

her statement to the deputy sheriffs; however, the Court will limit her testimony and will preclude the testimony of corroborating witnesses unless the Government opens the door. Evidence of her prior convictions for income tax and workers' compensation fraud is mandatorily admissible under Rule 609(a)(2).

    SO ORDERED.

                                      <u>/s/ John A. Woodcock, Jr.</u>
                                      JOHN A. WOODCOCK, JR.
                                      CHIEF UNITED STATES DISTRICT JUDGE

Dated this 9th day of September, 2013