# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| CAROLE SWAN, ) | |
| ) | |
| Petitioner ) | |
| ) | |
| v. ) | No. 1:12-cr-00027-JAW-1 |
| ) | No. 1:17-cv-00405-JAW |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent ) | |

## RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION

The petitioner, Carole Swan, has moved, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct her sentence. *See* Motion for Reduction ("Motion") (ECF No. 462). In 2014, following two separate jury trials, the petitioner was convicted of three counts of Hobbs Act extortion, 18 U.S.C. § 1951(a), as well as five counts of tax fraud and two counts of making false statements to obtain federal employees' compensation. *See* Judgment (ECF No. 358) at 1; Jury Verdicts (ECF Nos. 167, 273). The court sentenced the petitioner to a total of 87 months in prison. *See* Judgment at 2. The petitioner appealed from the convictions on the basis that the court erred in denying a motion to suppress; the First Circuit affirmed. *See United States v. Swan*, 842 F.3d 28, 29 (1st Cir. 2016).

In the petitioner's section 2255 motion, she seeks to vacate the extortion conviction. *See* Motion at [1]. The petitioner argues that she is entitled to relief based on the Supreme Court's interpretation, in *McDonnell v. United States*, __ U.S. __, 136 S. Ct. 2355 (2016), of the term "official act" under 18 U.S.C. § 201(a)(3). *See id.* The petitioner also argues that there is insufficient evidence to support the extortion conviction. *See id.* at [3]-[4].

Following a review of the Motion and the government's request for summary dismissal, I recommend that the court grant the government's request, deny relief, and dismiss the Motion.

## I. Factual Background and Procedural History

The superseding indictment alleged, among other things, that the petitioner,

> a selectman and assessor for the Town of Chelsea, Maine, who had decision-making responsibility for awarding and paying for services contracted by Chelsea, did knowingly obstruct, delay, and affect and attempt to obstruct, delay, and affect in any way and degree commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in 18 U.S.C. § 1951; that is, defendant obtained and sought to obtain the Property identified below, not due her or her office, from Frank Monroe Construction, with its consent, under color of official right . . . .

Superseding Indictment (ECF No. 112) at 1. Counts 1 through 3 of the superseding indictment each alleged a date on which a Hobbs Act crime occurred and a dollar amount involved. *See id*. Count 1 was on or about January 25, 2010, in the amount of $3,000; Count 2 was on or about December 3, 2010, in the amount of $7,000; and Count 3 was on or about February 3, 2011, in the amount of $10,000. *See id.* In September 2013, the jury found the petitioner guilty of Counts 1 through 3.[1] *See* Jury Verdict (ECF No. 273).

The petitioner appealed from the convictions on the basis that the court erred in denying a motion to suppress, and the First Circuit affirmed. *See Swan*, 842 F.3d at 29.

The petitioner initially filed her section 2255 motion on April 20, 2017, characterizing it as a motion for relief pursuant to 18 U.S.C. § 3582. *See* Motion for Reduction (ECF No. 445) at [1]. The government argued that the motion should be construed as a request for relief under 28 U.S.C. § 2255. *See* Government's Supplemental Response in Opposition

---

[1] The petitioner was also convicted of tax fraud and false statements, 26 U.S.C. § 7206(1), and false statements to obtain federal employees' compensation, 18 U.S.C. § 1920. *See* Judgment (ECF No. 358) at 1. She was sentenced to 87 months in prison, followed by three years of supervised release, on the extortion charges, and lesser concurrent terms on the other charges. *See id.* at 2-3.

("Response") (ECF No. 456) at 13.  The court agreed with the government and issued an order pursuant to *Castro v. United States*, 540 U.S. 375 (2003), advising the petitioner that the motion would be construed as a section 2255 motion, "and therefore the rules against second or successive motions will apply to any future motions under 28 U.S.C. § 2255." *See Castro* Order (ECF No. 460) at 1.  The court gave the petitioner the opportunity to withdraw or amend the motion.  *See id.*

The petitioner informed the court that she chose not to withdraw or amend the motion. *See* Petitioner's Response to *Castro* Order (ECF No. 461) at 1.  The petitioner's initial filing (ECF No. 445) was then docketed at ECF No. 462 as a section 2255 motion.  *See* Motion.

The government requests a summary dismissal.  *See* Government's Response in Opposition (ECF No. 467) (relying on ECF Nos. 450, 456).

## II.  Applicable Legal Standards

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a); *see also, e.g.*, *Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).  The burden is on the section 2255 petitioner to establish that he or she is entitled to section 2255 relief.  *See, e.g.*, *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978).

A collateral challenge is not a substitute for an appeal.  *See, e.g.*, *United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002). A claim that is not raised on appeal is procedurally defaulted.  *See, e.g.*, *Bousley v. United States*, 523 U.S. 614, 621 (1998).  "Where a defendant has procedurally defaulted a claim by failing to

raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Id.* at 622 (quoting *Murray v. Carrier*, 477 U.S. 478, 485, 496 (1986)). Procedural default is an affirmative defense. *See, e.g., Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010).

### III. Discussion

#### A. Timeliness

The government appropriately concedes that all claims in the petitioner's motion are timely under 28 U.S.C. § 2255(f)(1).[2] *See* Response at 13-14 n.2.

#### B. The *McDonnell* Claim

##### 1. The Supreme Court's Decision in *McDonnell*

The petitioner's motion is based in part on *McDonnell*, in which the issue, on direct appeal followed by a grant of certiorari, was "the proper interpretation of the term 'official act'" under 18 U.S.C. § 201(a)(3).[3] *McDonnell*, 136 S. Ct. at 2367. In *McDonnell*, the Court noted it had previously construed Hobbs Act extortion "to include 'taking a bribe.'" *Id.* at 2365

---

[2] Title 28 U.S.C. § 2255(f)(1) provides that a one-year limitation period shall run, *inter alia*, from "the date on which the judgment of conviction becomes final[.]" The Supreme Court has noted that if a federal prisoner "chooses not to seek direct review in this Court, then the conviction becomes final when 'the time for filing a certiorari petition expires.'" *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009) (quoting *Clay v. United States*, 537 U.S. 522, 527 (2003)). Under Rule 13 of the Supreme Court Rules, a petition for a writ of certiorari must be filed within 90 days of the entry of a judgment of a United States court of appeals or from the date of denial of a timely petition for rehearing. *See* Sup. Ct. R. 13(1) & (3). In the petitioner's case, the First Circuit granted her motion for an extension of time to file a petition for rehearing, and the petition for rehearing was filed within the time provided by the extension. *See* General Docket entries dated Jan. 11 & 30, 2017, *United States v. Swan*, No. 14-1672 (1st Cir.). On February 14, 2017, the First Circuit denied a rehearing. *See* General Docket entry dated Feb. 14, 2017, *id.* The time for filing a certiorari petition, therefore, expired 90 days thereafter, in May 2017, and that is when the section 2255 limitation period began to run. In its *Castro* Order, this court suggested that the date on which the petitioner made her initial filing would be considered the date of filing of the 28 U.S.C. § 2255 motion. *See Castro* Order at 6 n.8 (noting that "any new claims must be timely or must relate back to her initial § 2255 filing"). The petitioner filed her initial section 2255 motion on April 20, 2017, more than a year before the limitation period ended, and the motion, therefore, was timely under section 2255(f)(1).

[3] Title 18 U.S.C. § 201(a)(3) provides:
> [T]he term "official act" means any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit.

4

(quoting *Evans v. United States*, 504 U.S. 255, 260, 269 (1992)). The Court described the relevant jury instructions:

> The [district] court described the five alleged "official acts" set forth in the indictment, which involved arranging meetings, hosting events, and contacting other government officials. The court then quoted the statutory definition of "official act," and − as the Government had requested − advised the jury that the term encompassed "acts that a public official customarily performs," including acts "in furtherance of longer-term goals" or "in a series of steps to exercise influence or achieve an end."

*Id.* at 2366 (citation omitted).

The Court recognized that a two-part test applies to determine whether the government has proven that the defendant engaged in an official act:

> The text of § 201(a)(3) sets forth two requirements for an "official act": First, the Government must identify a "question, matter, cause, suit, proceeding or controversy" that "may at any time be pending" or "may by law be brought" before a public official. Second, the Government must prove that the public official made a decision or took an action "on" that question, matter, cause, suit, proceeding, or controversy, or agreed to do so.

*Id.* at 2368. The Court clarified the definition of an official act as follows:

> In sum, an "official act" is a decision or action on a "question, matter, cause, suit, proceeding or controversy." The "question, matter, cause, suit, proceeding or controversy" must involve a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee. It must also be something specific and focused that is "pending" or "may by law be brought" before a public official. To qualify as an "official act," the public official must make a decision or take an action on that "question, matter, cause, suit, proceeding or controversy," or agree to do so. That decision or action may include using his official position to exert pressure on another official to perform an "official act," or to advise another official, knowing or intending that such advice will form the basis for an "official act" by another official.

*Id.* at 2371-72. The Court held: "Setting up a meeting, talking to another official, or organizing an event (or agreeing to do so) − without more − does not fit that definition of 'official act.'" *Id.* at 2372.

The Court noted that its decision was based in part on established Supreme Court precedent: "It is apparent from [*United States v. Sun-Diamond Growers of Calif.*, 526 U.S. 398 (1999)] that hosting an event, meeting with other officials, or speaking with interested parties is not, standing alone, a 'decision or action' within the meaning of § 201(a)(3), even if the event, meeting, or speech is related to a pending question or matter." *Id.* at 2370. The Court also clarified that an agreement to act is sufficient: "Under this Court's precedents, a public official is not required to actually make a decision or take an action on a 'question, matter, cause, suit, proceeding or controversy'; it is enough that the official agree to do so." *Id.* at 2370-71.

### 2. Procedural Default of the *McDonnell* Claim

*McDonnell* may eventually be held to apply retroactively to cases on collateral review.[4] However, even if it is, the petitioner's claim is nonetheless subject to the rules governing procedural default, because, as the government points out, *see* Response at 14, and the trial record reflects, the petitioner did not raise a *McDonnell*-type issue at trial, and the petitioner's appellate brief reflects that she did not raise the issue on appeal, *see* Appellant's Brief, *Swan* (1st Cir. filed Mar. 23, 2015) at 1 (statement of issues). Because the claim is procedurally defaulted, the

---

[4] The Supreme Court's holding in *McDonnell* may operate as a substantive rule that applies retroactively in collateral cases because the Court held that certain conduct does not qualify as an official act under section 201(a)(3). *See McDonnell*, 136 S. Ct. at 2367-68, 2371-72; *see also, e.g.*, *Bousley*, 523 U.S. at 620. In *Bousley*, the Supreme Court recognized that "decisions of this Court holding that a substantive federal criminal statute does not reach certain conduct, like decisions placing conduct beyond the power of the criminal law-making authority to proscribe, necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal." *Bousley*, 523 U.S. at 620 (citations and internal quotation marks omitted). *See also Schriro v. Summerlin*, 542 U.S. 348, 351 (2004) ("New *substantive* rules generally apply retroactively. This includes decisions that narrow the scope of a criminal statute by interpreting its terms.") (emphasis in original).

petitioner must demonstrate cause for the procedural default and prejudice, or she must demonstrate actual innocence. *See Bousley*, 523 U.S. at 622.[5]

### a. Cause

The petitioner contends, at bottom, that she has established cause for the procedural default because the Supreme Court's decision in *McDonnell* was novel, and, thus, not available to counsel before *McDonnell* was decided. *See* Motion at [3] ("The Supreme Court's decision [in *McDonnell*] has changed the landscape . . . ."). In *Bousley*, the Supreme Court noted that it had previously "held that a claim that 'is so novel that its legal basis is not reasonably available to counsel' may constitute cause for a procedural default[.]" *Bousley*, 523 U.S. at 622 (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). However, the Supreme Court also concluded in *Bousley* that the futility of a defaulted argument does not in itself establish cause for the default. *See id.* at 623 ("'futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time'") (quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982)) (internal quotation marks omitted).

It appears that neither the First Circuit nor this court has addressed the issue of whether the failure to raise a *McDonnell*-type argument, before the Supreme Court decided *McDonnell*, constitutes cause for a procedural default. However, district courts in other jurisdictions have concluded that the failure to raise a *McDonnell*-type argument prior to the Supreme Court's

---

[5] In the context of a procedurally defaulted claim, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. The petitioner's section 2255 motion is based on a legal argument under *McDonnell*, and on her contention that the evidence was insufficient as to certain elements of the crime. The petitioner has made no showing of actual, factual innocence. *See House v. Bell*, 547 U.S. 518, 536-38 (2006) (noting that the actual-innocence standard is not equivalent to the standard that governs claims of insufficient evidence, and that "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt'") (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)); *United States v. Gieswein*, 495 F. App'x 944, 947 n.2 (10th Cir. 2012) (concluding that the petitioner's "challenge to the legal sufficiency of the trial evidence . . . does not inherently translate to an affirmative claim of actual innocence").

decision in *McDonnell* does not constitute cause for a procedural default. *See Elgawhary v. United States*, Civil Action No. DKC 17-1762, Criminal No. DKC 14-0068, 2018 WL 398284, at *3 (D. Md. Jan. 11, 2018) (recognizing that "[t]he question is not about the novelty or importance of the Supreme Court's decision [in *McDonnell*] but rather whether the *argument* that led to that decision was novel[,]" and concluding that the argument was not novel, but rather "commonplace and routine"); *United States v. Ciavarella*, CRIMINAL NO. 3:09-CR-272, 2018 WL 317974, at *10 (M.D. Pa. Jan. 8, 2018) (concluding that the petitioner had not established cause for a procedural default); *United States v. Jefferson*, No. 1:07-cr-209, 2017 WL 4423258, at *10 (E.D. Va. Oct. 4, 2017) (concluding that the petitioner had not procedurally defaulted the claim because he "consistently challenged the government's definition of 'official act'" and opposed the relevant jury instruction).

In the absence of controlling authority, I adopt the reasoning in *Elgawhary* and conclude that because a *McDonnell*-type argument "was an available argument that Petitioner did not make[,]" *Elgawhary*, 2018 WL 398284, at *3, the petitioner has failed to demonstrate cause for the procedural default.[6]

---

[6] Although it does not appear that the petitioner intended to include a claim of ineffective assistance of counsel for the failure to assert a *McDonnell*-type argument, the conclusion that an argument was not novel does not establish that counsel was ineffective in failing to assert it. A demonstration of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), may satisfy the requirement that a petitioner show cause for a procedural default. *Wilder v. United States*, 806 F.3d 653, 658 (1st Cir. 2015) (citing *Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991)). However, that a claim is not novel does not in itself establish that counsel's failure to assert the claim constitutes ineffective assistance. *See, e.g., Pitts v. Cook*, 923 F.2d 1568, 1572 (11th Cir. 1991) (noting that "[the] existence of tools to construct [a] constitutional claim − and thus [the] lack of novelty sufficient to constitute cause for [a] procedural default − does not mean every astute, much less competent, counsel would have raised the claim") (citing *Engle v. Isaac*, 456 U.S. 107, 133-34 (1982)). Furthermore, as discussed below, the petitioner has no meritorious *McDonnell*-type claim because her conduct fell "squarely within the category of 'official acts' as clarified by *McDonnell*." *Ciavarella*, 2018 WL 317974, at *13 (citing *United States v. Repak*, 852 F.3d 230, 254 (3d Cir. 2017)). The petitioner, therefore, cannot demonstrate either that "counsel's representation fell below an objective standard of reasonableness" or that she suffered prejudice. *See Strickland*, 466 U.S. at 688, 691-92.

8

### b. Prejudice

In *Frady*, the Supreme Court reaffirmed the standard for prejudice that applies in a collateral action in which a petitioner argues a jury instruction was erroneous. 456 U.S. at 154, 169. The court must determine "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned.'" *Id.* at 169 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)) (internal quotation marks omitted).

The petitioner contends the jury instructions on the Hobbs Act charge were in error under *McDonnell*. *See* Motion at [1]-[2]. The relevant instructions were as follows:

> Counts 1 through 3. The government charges Carole Swan with obstructing, delaying, or affecting commerce by committing extortion. It is against federal law to engage in such conduct. For you to find Carole Swan guilty of these charges, the government must prove the following three elements beyond a reasonable doubt: First, that Carole Swan knowingly and willfully obtained property from Frank Monroe Construction; second, that Carole Swan did so by means of extortion; and, third, that the extortion affected interstate commerce.
>
> ***
>
> Extortion means obtaining property from another with his consent, but where that consent is obtained under color of official right.
>
> To prove extortion under color of official right, the government must show that Carole Swan, a public official, obtained property to which she was not entitled and knew at the time she was obtaining in return for official acts. The government need not show that Carole Swan initiated the transfer, nor does the government need to show that Ms. Swan actually had the ultimate authority to achieve the desired result.

*See* Transcript of Proceedings ("Trial Tr."), Vol. VI (ECF No. 424), at 1333-34. The record reflects that the petitioner did not request an instruction on the definition of "official act," and the government, by arguing a procedural default, *see* Response at 14, represents as much.

The jury instructions did not define the term "official act," although they were tailored to the elements of the crime of Hobbs Act extortion under color of right, as the elements have been expressed by the Supreme Court:

> As all parties agree, the type of extortion for which petitioner was convicted − obtaining property from another with his consent and under color of official right − is the "rough equivalent of what we would now describe as 'taking a bribe.'" To prove this offense, the Government "need only show that a public official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts."

*Ocasio v. United States*, __ U.S. __, 136 S. Ct. 1423, 1428, 1432 (2016) (quoting *Evans*, 504 U.S. at 260, 268) (holding that, for purposes of a conspiracy to violate the Hobbs Act, "[i]t is sufficient to prove that the conspirators agreed that the underlying crime *be committed* by a member of the conspiracy who was capable of committing it") (emphasis in original).

In *United States v. Boyland*, 862 F.3d 279, 290-91 (2d Cir. 2017), the Second Circuit concluded that similar jury instructions were flawed under *McDonnell*. The court noted that "the jury was told that in order to convict on [Hobbs Act extortion] counts it needed to find that Boyland knew that any money he accepted 'was offered in exchange for a specific exercise of [Boyland's] official powers.'" *Boyland*, 862 F.3d at 290 (citation omitted). The court concluded:

> We believe that the instructions provided to the jury here with regard to Hobbs Act extortion, not explicitly incorporating the definition of "official act" in 18 U.S.C. § 201(a)(3), suffered from the same flaws, in that they did not sufficiently inform the jury as to the nature of the power that the government was required to prove the defendant exercised or promised to exercise.

*Id.* at 291. Although the instructions in the petitioner's trial were not overbroad, as were the instructions in *McDonnell,* they nonetheless could be considered flawed following *McDonnell* because they did not explicitly incorporate the definition of "official act" under section 201(a)(3). *See id.* at 290-91.

Yet, regardless of whether or not the instructions were in error, the standard of review under *Frady* requires the court to consider whether the petitioner suffered actual prejudice, viewing the jury instructions in "the total context of the events at trial." *Frady*, 456 U.S. at 169.

> Moreover, "a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge. Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction."

*Id.* (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)); *see also, e.g.*, *Ciavarella*, 2018 WL 317974, at *12-13 (holding that although the jury instructions were "arguably overbroad" under *McDonnell*, the court could not find that the petitioner "would have benefitted from more restrictive instructions[,]" and, thus, he failed to demonstrate "that the instructional error 'so infected the entire trial that the resulting conviction violate[d] due process'") (quoting *Frady*, 456 U.S. at 169). In *Boyland*, the Second Circuit held, on plain error review on appeal, that the failure to provide jury instructions on the definition of official acts did not affect the appellant's substantial rights. 862 F.3d at 291-92.

The petitioner did not suffer prejudice by virtue of the lack of instructions on the definition of "official act" under 18 U.S.C. § 201 because her "conduct falls squarely within the category of 'official acts' as clarified by *McDonnell*[,]" and, therefore, more explicit jury instructions would not have altered the outcome of the trial. *Ciavarella*, 2018 WL 317974, at *13 (citing *Repak*, 852 F.3d at 254 (concluding that the facilitation of a contract award is an "official act" under *McDonnell*)). *See also, e.g., United States v. Skelos*, 707 F. App'x 733, 739 (2d Cir. 2017) (summary order) ("Using one's influence as a high ranking state official to push through county legislation and to bestow a county-issued contract are indisputably formal exercises of governmental power constituting official acts under *McDonnell*.").

11

The evidence of the petitioner's official acts consisted in part of the testimony of Frank Monroe (1) that the petitioner, a selectman, in early 2010 offered Monroe a no-bid extension of a plowing contract, eventually signed by the petitioner, pursuant to which the petitioner was listed as a contact person, *see* Trial Tr. Vol. I (ECF No. 418) at 144-48, 151-54; Trial Tr. Vol. II (ECF No. 419) at 229-32; (2) that the petitioner ordered sand in December 2010, *see* Trial Tr. Vol. I at 167-70; and (3) that in January 2011, the petitioner ordered additional sand and gave Monroe instructions regarding the invoice for the sand delivery, *see id.* at 172-74.[7]

Each of these acts meets both parts of the two-part test under *McDonnell*, *see* 136 S. Ct. at 2368, and, therefore, each constitutes an official act under 18 U.S.C. § 201(a)(3), *see, e.g., Repak*, 852 F.3d at 254; *United States v. Conley*, _ F. Supp.3d _, 3:13-CR-00028-GFVT-REW-1, 2017 WL 5953153, at *4-5 (E.D. Ky. Dec. 1, 2017) (concluding that "[t]he process by which certain public construction contracts were awarded" satisfied the first prong of the *McDonnell* test; the submission of information that formed the basis for contract awards satisfied the second prong; and, therefore, the petitioner was not entitled to habeas relief following his conviction for honest services fraud).

Given that the petitioner's actions were official acts under section 201, there is no reasonable probability that the failure to include the definition of the term "official act" in the jury instructions affected the petitioner's substantial rights, and, therefore, the petitioner cannot demonstrate actual prejudice. *See, e.g., Boyland*, 862 F.3d at 291-92; *United States v. Bailey*, 286 F.3d 1219, 1223 (10th Cir. 2002).

---

[7] Frank Monroe did business as Frank Monroe Construction. *See* Trial Tr. Vol. I at 132-33.

## C. Claims Regarding Sufficiency of the Evidence

The petitioner's remaining claims allege that there was insufficient evidence in support of the extortion conviction; specifically, she contends there is insufficient evidence (1) that she wrongfully received a benefit from Monroe; (2) that she pressured or threatened Monroe; or (3) that her actions involved interstate commerce. *See* Motion at [4].

"Issues not pursued on direct appeal are subject to the cause and prejudice standard under [*Frady*, 456 U.S. at 167-68]." *Akitoye v. United States*, No. 93-1217, 1993 WL 532395, at *1 (1st Cir. Dec. 27, 1993) (per curiam) (holding that the appellant was "barred from raising [a] claim concerning the sufficiency of the evidence unless he c[ould] show cause and prejudice"); *see also, e.g.*, *Rivera-Rivera v. United States*, 827 F.3d 184, 187-88 & n.8 (1st Cir. 2016) (holding that the petitioner failed to demonstrate prejudice on a claim of ineffective assistance for counsel's failure to challenge the sufficiency of the evidence of interstate commerce when the evidence was in fact sufficient).[8]

The government introduced sufficient evidence that the petitioner, when she was a selectman, obtained a payment to which she was not entitled, knowing that the payment was made in return for official acts. *See Ocasio*, 136 S. Ct. at 1428. Monroe testified that in late January or early February of 2010, the petitioner told him that he had a "lucrative contract" with the town; that the petitioner demanded that he pay her $3,000 from a payment he was to receive from the town for delivering sand in January 2010; and that he complied with the petitioner's demand. *See* Trial Tr. Vol. I at 159-65. Monroe testified that in December 2010, the petitioner demanded that he pay her $7,000 from the $20,250 payment he received from the town for a sand delivery, and he complied. *See id.* at 166-71. Monroe testified that the petitioner demanded that he overstate

---

[8] As discussed above, a claim of insufficient evidence does not equate to a claim of actual innocence. *See Bousley*, 523 U.S. at 623.

13

the quantity of sand delivered in January 2011, and that he pay her $10,000 from the check she had provided Monroe for the sand delivery. *See id.* at 173-75. Monroe informed the Kennebec County Sheriff's Office, and, as part of a sting operation, he handed over a bag of cash to the petitioner. *See id.* at 177-80, 200-05. The evidence was sufficient to prove the petitioner obtained the payments, to which she was not entitled, knowing that they were in return for official acts. *See Ocasio*, 136 S. Ct. at 1428. Therefore, the petitioner has demonstrated neither cause nor prejudice. *See Frady*, 456 U.S. at 167-68; *Rivera-Rivera*, 827 F.3d at 187-88 & n.8.

The government also introduced sufficient evidence to establish the element of interstate commerce. *See* 18 U.S.C. § 1951(a) & (b)(3). The First Circuit has held that "'the government need only show a realistic probability of a de minimis effect on interstate commerce[] in order to bring extortion within the reach of the Hobbs Act.'" *United States v. Vázquez-Botet*, 532 F.3d 37, 60 n.19 (1st Cir. 2008) (quoting *United States v. Rivera-Medina*, 845 F.2d 12, 15 (1st Cir. 1988)). A de minimis effect is established "if conduct 'minimally depletes the assets of an entity doing business in interstate commerce.'" *United States v. Buffis*, 867 F.3d 230, 234 (1st Cir. 2017) (quoting *United States v. Cianci*, 378 F.3d 71, 99 (1st Cir. 2004)).

Monroe testified that the equipment he used in his plowing and sanding business was manufactured outside of Maine and that, due to his payments to the petitioner, he had difficulty meeting the payment terms on some equipment he had financed. *See* Trial Tr. Vol. I at 208-18. The evidence was sufficient to establish that the petitioner's conduct minimally depleted Monroe's assets, and, thus, it satisfied the interstate commerce element of the crime. *See Buffis*, 867 F.3d at 234.

The petitioner's contention that evidence of a threat was lacking fails because a threat is not an element of the crime of Hobbs Act extortion by color of right. *See id.* at 235.

> "[A]n element of duress such as a demand" is not an element of the offense of Hobbs Act extortion under color of official right. *Evans*, 504 U.S. at 267-68[.] "The 'color of official right' and 'fear' prongs provide alternative, independently sufficient grounds for finding extortion; thus, adequate proof of one obviates any need for proof of the other." [*United States v. Cruz-Arroyo*, 461 F.3d 69, 73 (1st Cir. 2006)]. In other words, where the government presents evidence that the government official received a payment under color of official right, it need not prove that the official induced the payment through fear.

*Id.* In short, the petitioner's claim fails because evidence of duress or a threat was unnecessary to the Hobbs Act extortion conviction. *See id.*

### IV. Conclusion

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases. In addition, I recommend that the court deny relief and dismiss the petitioner's motion for habeas relief under 28 U.S.C. § 2255. I further recommend that the court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 15th day of February, 2018.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge